IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MATTHEW A. GUZZETTA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:25-cv-0346 (AJT/WEF) |
| ) | |
| FAIRFAX COUNTY, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

In this employment dispute, Defendants Fairfax County, Kevin Davis, and Todd Billeb filed a Motion to Dismiss Plaintiffs Second Amended Complaint Pursuant to Rule 12(b)(6), [Doc. No. 39] (the "Motion"). The Court heard oral argument on the Motion on September 24, 2025, following which it took the Motion under advisement. Upon consideration of the Motion, the memoranda in support thereof [Doc. Nos. 40, 46], and in opposition thereto Doc. No. 44], and for the reasons stated herein, Defendant's Motion is **GRANTED**, and Plaintiff's section 1983 claims (Counts I-II) are **DISMISSED**, and Plaintiff's remaining state law claims (Counts III-VI) are **DISMISSED without prejudice**, the Court having determined not to exercise supplemental jurisdiction over these state law claims.

**I.     BACKGROUND**

The Plaintiff has alleged the following in his Second Amended Complaint, [Doc. No. 38]:

Plaintiff Matthew A. Guzzetta is a former police officer for the Fairfax County Police Department ("FCPD"), a department of the government of Fairfax County, Virginia. [Doc. No. 38] ¶¶ 4–6. Defendant Fairfax County is an official subdivision of the Commonwealth of Virginia that employed Plaintiff Guzzetta through the FCPD. *Id.* ¶ 6. Defendant Kevin Davis, being sued

1

in his official and individual capacities, is employed by Fairfax County and serves as the Chief of Police for the FCPD. *Id.* ¶ 7. Defendant Todd Billeb, being sued in his official and individual capacities, was at all relevant times employed by Fairfax County, and served as a Major at FCPD. *Id.* ¶ 8.

The FCPD hired Plaintiff Guzzetta as a police officer in August 2004. *Id.* ¶ 10. Plaintiff Guzzetta then served in several roles: (i) FCPD patrol officer at the Mount Vernon Police Station from 2005 to 2008; (ii) FCPD police officer in the Mount Vernon Neighborhood Patrol Unit from 2008 to 2010; (iii) FCPD detective in the Narcotics Unit from 2010 to 2014; (iv) FCPD detective in the Street Crimes Unit from 2014 to 2016; (v) FCPD patrol unit sergeant for the Fair Oaks Station from 2016 to 2017; and (vi) FCPD sergeant in the Street Crimes Unit from 2017 to 2021 *Id.* ¶¶ 11–16. During that service, Plaintiff Guzzetta took additional training courses, earned awards, and received commendations from the FCPD. *Id.* ¶¶ 17–18 (listing the courses, awards, and commendations).

A. <u>FCPD Supervisor's Meeting</u>

On or approximately May 1, 2022, Plaintiff Guzzetta attended an FCPD Supervisor's meeting where an attendee, Lieutenant Anne Rizza, asked Plaintiff Guzzetta a series of questions regarding how she could verify her children were not using SnapChat inappropriately. *Id.* ¶¶ 19–22. Unbeknownst to Plaintiff Guzzetta, Lt. Rizza had no personal interest in SnapChat and was questioning him pursuant to an Internal Affairs investigation. *Id.* ¶ 23. Of note, Lt. Rizza is married to Defendant Billeb, a high-ranking official in the FCPD Internal Affairs department. *Id.* ¶ 20.

B. <u>Internal Affairs Investigation</u>

On May 4, 2022, FCPD Internal Affairs notified Plaintiff Guzzetta that he was "under an Administrative Investigation for (1) procedures related to vehicle care and maintenance, and (2) procedures related to search and seizure of SnapChat accounts," and called him in for questioning.

2

*Id.* ¶ 25. At that meeting with Internal Affairs, Plaintiff Guzzetta answered many of the same SnapChat questions asked by Lt. Rizza at the FCPD Supervisor's meeting, and questions regarding a newly purchased FCPD undercover vehicle that Plaintiff Guzzetta paid $400 to have repaired using his personal funds, with that amount later reimbursed to him by the FCPD. *Id.* ¶¶ 26–28. That same day, the FCPD placed Plaintiff Guzzetta on administrative leave pursuant to Chapter 10 of the Personnel Regulations for the County of Fairfax while FCPD conducted the Internal Affairs investigation. *Id.* ¶¶ 29, 32; [Doc. No. 38-1] at 51.

On May 19, 2022, Plaintiff Guzzetta then went through a second round of questioning regarding the use of FCPD-controlled buy funds. [Doc. No. 38] ¶ 36. A third round of questioning with Internal Affairs occurred on May 26, 2022, where several Internal Affairs personnel, including Defendant Billeb, questioned Plaintiff Guzzetta about SnapChat. *Id.* ¶¶ 37–38. On June 1, 2022, Plaintiff Guzzetta was notified that he had been replaced within the Narcotics Unit. *Id.* ¶ 41. Throughout these rounds of questioning, Plaintiff Guzzetta did not understand the allegations against him, the status of the Internal Affairs investigation, and the possible consequences, despite his repeated requests for more information and documentation. *Id.* ¶¶ 47–49, 51.

On January 5, 2023, Plaintiff Guzzetta was informed that the administrative investigation had been completed and would be "forwarded for further command review and action." [Doc. No. 38-2] at 71. The notice stated that if the reviewing authority determines that a violation of a regulation has occurred, a hearing would take place pursuant to General Order 310, Discipline and Appeals. *Id.*

On or about February 21, 2023, Defendant Billeb informed Plaintiff Guzzetta that the Internal Affairs team had reached two conclusions as a result of the investigation: first, Plaintiff Guzzetta was untruthful throughout the investigation; and second, Plaintiff Guzzetta had

3

improperly pressured another FCPD officer to personally pay for the undercover vehicle repairs. [Doc. No. 38] ¶ 56. Plaintiff Guzzetta alleges that he was never formally informed what range of penalties he would face as a result of those findings, other than potential termination unless he voluntarily retired. *Id.* ¶¶ 39, 44.

On or about August 26, 2024, Plaintiff Guzzetta obtained a copy of his Police Department Retirement Form ("PD-29"), which stated that he "retired" from the police department and did not leave in good standing. *Id.* ¶ 84; [Doc. No. 38-2] at 73–77. Plaintiff alleges this form "can be made available to future, prospective employers." [Doc. No. 38] ¶ 55.

C. <u>Defendant Billeb Pressures Plaintiff Guzzetta to Retire</u>

Central to this action is Plaintiff's resignation, which Plaintiff tendered in October 2022.[1] In that regard, Defendant Billeb allegedly repeatedly coerced Plaintiff Guzzetta to retire. First, on May 26, 2022, Defendant Billeb acted "harshly and was asserting his power over [Plaintiff] Guzzetta in a threatening manner" before advising Plaintiff Guzzetta to retire. *Id.* ¶¶ 37, 39. Then, on August 15, 2022, Plaintiff Guzzetta was informed that Defendant Billeb said Plaintiff Guzzetta would be terminated and it was in his best interest to retire. *Id.* ¶ 44. On other occasions, Defendant Billeb offered to "slow roll" the Internal Affairs investigation so that it would conclude after Plaintiff Guzzetta was eligible for retirement[2] and Defendant Billeb "went as far as to set the date by which [Plaintiff] Guzzetta should retire." *Id.* ¶¶ 50–52. In October 2022, Plaintiff Guzzetta "initially agreed" to retire and various Internal Affairs personnel processed his retirement

---

[1] Although the Second Amended Complaint does not allege when Plaintiff "initially agreed" to the February 2023 retirement, both parties agreed at the September 24, 2025 hearing that Plaintiff submitted his resignation in October 2022 while on paid administrative leave.
[2] Defendants state a February 2023 retirement allowed Plaintiff to accumulate twenty years of service. [Doc. No. 40] at 10.

4

paperwork "at the direction of [Defendant] Billeb" without permitting Plaintiff Guzzetta to verify the information therein. *Id.* ¶¶ 53–55.

On or about February 23, 2023, two days after the Internal Affairs investigation was allegedly closed, Plaintiff Guzzetta received his FCPD retirement credentials, which listed his retirement date as February 24, 2023. *Id.* ¶ 57. On February 23, 2023, Plaintiff Guzzetta emailed Deputy Chief Robert Blakley and FCPD HR Director Melissa Blanda to rescind his retirement request. *Id.* ¶¶ 59, 60. On February 24, 2023, at 4:19 pm, FCPD Chief Davis denied Plaintiff Guzzetta's request to rescind his retirement. *Id.* ¶ 63. Plaintiff Guzzetta requested to speak to Chief Davis about the allegations, but no such conversation or hearing occurred. *Id.* ¶¶ 64, 65. In sum, from May 4, 2022 until February 24, 2023, Plaintiff Guzzetta was on administrative leave with pay pursuant to Chapter 10 of the Personnel Regulations for the County of Fairfax, [Doc. No. 38-1] at 51,[3] and his final day of employment was February 24, 2023. *Id.* ¶ 29.

D. <u>Plaintiff Guzzetta's Requests for Investigations Into FCPD Misconduct</u>

On at least four occasions, Plaintiff Guzzetta requested that FCPD investigate whether "the [Internal Affairs] investigation was in direct retaliation" for his informal complaints of Lt. Rizza. *Id.* ¶ 40. First, on May 5, 2022, the day after Plaintiff Guzzetta was informed that he was being investigated by Internal Affairs, Plaintiff Guzzetta submitted an informal complaint to Captain Lucas Durden, who had attended the FCPD Supervisor's meeting and overheard Lt. Rizza's questioning, "about the inappropriateness of Lt. Rizza's questioning," and Captain Durden agreed that Lt. Rizza's conduct was improper, and Captain Durden agreed to investigate it. However, "[u]pon information and belief, this investigation never took place. *Id.* ¶¶ 22, 24, 30–31. Second,

---

[3] Chapter 10.36 of the Personnel Regulations for the County of Fairfax provides that administrative leave is paid and can be granted, *inter alia*, during the investigation of an alleged improper act by an employee which may result in formal disciplinary actions.

5

on May 10, 2022, Plaintiff Guzzetta submitted a complaint to Major Brian A. Ruck, and Lt. Ramsy Saffoori about Lt. Rizza's questioning, and the latter promised to investigate and determine whether Lt. Rizza's conduct violated the Law Enforcement Officer Bill of Rights, but once again, Plaintiff Guzzetta understands no such investigation was undertaken. *Id.* ¶ 34–35.

Third, on February 23, 2023, Plaintiff Guzzetta emailed Deputy Chief Robert Blakley (i) "expressing concern that he was deprived of his due process rights;" (ii) "identifying his concern that FCPD officers were retaliating against him;" and (iii) "reporting police misconduct in his Internal Affairs investigation." *Id.* ¶ 59. No investigation into these allegations appears to have occurred. *Id.* Finally, on February 24, 2023, then-counsel for Plaintiff Guzzetta emailed a letter to Chief Davis requesting that he investigate FCPD's alleged misconduct and Plaintiff Guzzetta's "forced retirement." *Id.* ¶ 66. As of May 13, 2025, "upon information and belief, no investigation was conducted." *Id.*

E. <u>Plaintiff Guzzetta Attempts to Appeal & Contest His Decertification</u>

Despite his efforts to rescind his retirement, including inquiries with the Fairfax County Retirement Board, Plaintiff Guzzetta received a certified letter, dated April 26, 2023, notifying him that he was being decertified as a law enforcement officer pursuant to VA Code Sec. 15.2-1707(B)(vi); that FCPD Internal Affairs concluded he engaged in conduct in the official course of his duties that compromised his credibility, integrity, or honesty; and that he exhausted or waived all grievances and appeals for the finding of misconduct and employment separation. *Id.* ¶¶ 66, 70, 71. Plaintiff Guzzetta understands that he never had the opportunity to appeal and he had not exhausted his administrative avenues. *Id.* In any case, Plaintiff Guzzetta appealed his decertification, claiming he was deprived of due process and he was the subject of the FCPD Internal Affairs team's misconduct. *Id.* ¶ 75. On or about July 25, 2024, the decertification appeals

hearing was held in Richmond, Virginia and Plaintiff Guzzetta successfully had the decertification overturned. *Id.* ¶ 82.

Notably, during the decertification proceedings, Plaintiff Guzzetta learned that FCPD had reached a third conclusion: he violated the Fourth Amendment by improperly using SnapChat. *Id.* ¶ 72. That third conclusion was "shocking" because "[Defendant] Billeb told Lt. Guzzetta not to worry about the SnapChat allegations, as it was a training issue only." *Id.* ¶ 73. Plaintiff Guzzetta continued to request the full record for the Internal Affairs investigation, including all investigative findings, review, and action; but his requests continued to be denied as late as on or about September 16, 2024. *Id.* ¶ 85.

F. Emotional Distress & Defamation

Plaintiff Guzzetta identifies several instances that alone and together caused him emotional distress. First, on June 1, 2022, while he remained on administrative leave, Plaintiff Guzzetta was "told that the allegations against him were too serious to allow him to remain at the [Organized Crime and Narcotics Division]," that he was being replaced, that he could not return to his station, and that another officer would drop off his personal belongings. *Id.* ¶¶ 41–42. Second, he learned he had been placed on the Commonwealth's Attorney's Office Brady list, thereby discrediting him as an officer for purposes of in-court testimony. *Id.* ¶ 48. Third, his decertification as a law enforcement officer was made public, as were the public hearings for the same and related press publications. *Id.* ¶ 76. Plaintiff Guzzetta alleges that these actions resulted in his good name being defamed. *Id.* ¶ 43.

G. Procedural Posture

Plaintiff Guzzetta filed suit on February 20, 2025, and an Amended Complaint on May 13, 2025, bringing five claims against Defendants Fairfax County, Davis, and Billeb. On June 23, 2025, this Court, ruling from the bench, granted a Motion to Dismiss as to Count I of the Amended

7

Complaint (a Section 1983 claim against Fairfax County that he was denied due process under the Fourteenth Amendment), with leave to amend. [Doc. No. 32].

On August 11, 2025, Plaintiff filed a Second Amended Complaint (the "Complaint") bringing six claims against Defendants Fairfax County, Davis, and Billeb: (1) a Section 1983 claim against Fairfax County that he was denied due process under the Fourteenth Amendment (Count I); (2) a similar Section 1983 claim against Davis and Billeb in their official and individual capacities (Count II); (3) a state law constructive discharge claim against all Defendants (Count III); (4) a state law fraud claim against all defendants (Count IV); (5) a state law defamation *per se* claim (Count V); and (6) a state claim for intentional infliction of emotional distress (Count VI). [Doc. No. 3]. The Court has jurisdiction over Counts I and II of Plaintiff Guzzetta's complaint pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Counts III through VI under 28 U.S.C. § 1367. On August 21, 2025, Defendants filed their Motion now under consideration.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This does not require detailed allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting Twombly, 550 U.S. at 555).

## III.   DISCUSSION

A. <u>Plaintiff Guzzetta Fails to Plausibly State a Section 1983 Claim Against Fairfax County or Defendants Davis and Billeb in Their Official or Individual Capacities for Denial of Due Process (Counts I and II).</u>

Plaintiff Guzzetta brings a Section 1983 claim for denial of procedural due process under the Fourteenth Amendment. [Doc. No. 3] ¶ 90. To state such a claim, he must (1) demonstrate that a Section 1983 claim is available against Fairfax County or Defendants Davis and Billeb in their

8

official or individual capacities; and (2) plausibly allege his procedural due process rights were violated. *See Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

> *1. Plaintiff Guzzetta has not plausibly alleged a cognizable Section 1983 claim against Fairfax County or Defendants Davis and Billeb in their official capacities.*

Plaintiff Guzzetta brings a Section 1983 claim against Fairfax County (Count I) and Defendants Davis and Billeb in their official (Count II) that he was denied due process under the Fourteenth Amendment. A federal official capacity suit is identical to a suit against the government entity for which the named defendant works. *See Kentucky v. Graham*, 473 U.S. 159, 165–6 (1985); *Huggins v. Prince George's Cnty., Md.*, 683 F.3d 525, 532 (4th Cir. 2012) ("Because [plaintiff's] naming of the Officials as defendants in their official capacities served as suits against the County, the County remained as the sole defendant . . ."). Because the claims against Defendants Davis and Billeb in their official capacities are duplicative of the claim against Fairfax County, the Court analyzes Plaintiff's official capacity claims against Defendants Davis and Billeb in Count II as claims against Fairfax County as their employer.

To state a Section 1983 claim against a municipality, a plaintiff must allege the municipality has undertaken an official policy or custom which causes an unconstitutional deprivation of the plaintiff's rights. *See Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978). The policy or custom "can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." *Lytle*, 326 F.3d at 471 (citing *Carter v. Morris,* 164 F.3d 215, 218 (4th Cir.1999)) (cleaned up).

9

Plaintiff Guzzetta alleges municipal liability is established through (1) Chief Davis's actions, as a person with final policymaking authority, and (2) a persistent and widespread practice of constitutional violations within Internal Affairs.[4] [Doc. No. 40] at 4–7. Defendants argue that Plaintiff fails to allege that final policymaking authority was delegated to Defendant Davis, and this Court has previously held that under Virginia law, the final policymaking body for Fairfax County is the Fairfax County Board of Supervisors. Additionally, Defendants argue that Plaintiff Guzzetta has failed to sufficiently allege a persistent and widespread practice of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference. *Spell v. McDaniel*, 824 F.2d 1380, 1386–91 (4th Cir. 1987).

        i.   *Final policymaking authority*

A municipality is liable only for the affirmative decisions of "final policymakers" of the municipality, and whether a particular official has "final policymaking authority" is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). Here, Plaintiff Guzzetta concedes that the final policymaking body for Fairfax County is the Fairfax County Board of Supervisors, [Doc. No. 44] at 6 (citing Va. Code § 15.2-403), but argues that "there is no evidence to suggest that the Board of Supervisors exercises review authority over Davis's personnel decisions," *id.*, and that Defendant Davis made the final decision to (1) refuse to rescind the retirement application; (2) deny Plaintiff Guzzetta a name-clearing hearing; and (3) retain stigmatizing statements in Plaintiff Guzzetta's records. [Doc. No. 38] ¶ 101–02.

However, as the Fourth Circuit has held, making personnel decisions, which is what Defendant Davis was doing, is not the same as setting and adopting policies. *See Greensboro Pro.*

---

[4] Plaintiff Guzzetta does not allege that Fairfax County undertook any specific policy or custom by way of the first or third categories of conduct establishing municipal liability identified in *Lytle*.

*Firefighters Ass'n, Loc. 3157 v. City of Greensboro*, 64 F.3d 962, 966 (4th Cir. 1995) (explaining that litigants should not "confuse the authority to make final *policy* with the authority to make final implementing *decisions*") (emphasis in original).[5] And Plaintiff has not otherwise alleged any facts indicating that Defendant Davis was delegated policymaking authority. *See Tomasello v. Fairfax Cnty.*, No. 1:15-CV-95, 2016 WL 165708 at *26 (E.D. Va. January 13, 2016) (noting that a showing that policymaking authority was delegated can give rise to a finding of final policymaking authority). At bottom, Plaintiff Guzzetta has merely alleged that Chief Davis had decision-making, not policymaking, authority.

### ii. Persistent and widespread practice

A plaintiff can alternatively establish *Monell* liability against a municipality if they can point to a persistent and widespread practice of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference. *Spell*, 824 F.2d at 1386–91. Sporadic or isolated violations of rights will not give rise to *Monell* liability; only "widespread or flagrant" violations will. *Id.* at 1387.

Here, Plaintiff Guzzetta alleges that Fairfax County "maintained a longstanding and widespread custom of denying due process rights to employees under IA investigation." [Doc. No. 38] ¶ 104. He claims to be "personally aware of over ten (10) complaints filed against the FCPD by current or former FCPD officers" that exhibits this alleged custom, including instances of "witness intimidation during IA investigative interviews, turning cameras off and engaging in

---

[5] *See also Robinson v. Balog*, 160 F.3d 183, 190 (4th Cir. 1998) (discussing that the Director of Baltimore Department of Public Works had power to choose whom to hire, promote, discharge, and transfer within the department, but that was not sufficient to establish that he had authority to craft municipal policy); *Crowley v. Prince George's County*, 890 F.2d 683, 686 (4th Cir.1989) (holding that even though county police chief was the final decisionmaker with regard to certain personnel decisions, he was not a policymaker for the county).

11

conversations with a subject or witness in the middle of IA investigative interviews, hostile work environment, and improper IA investigations." *Id.* ¶ 86. However, even assuming that each of these complaints amounted to actual constitutional violations, Plaintiff Guzzetta alleges no facts to indicate that these constitutional violations were comparable in nature and purpose to his alleged treatment, that his particular claimed treatment was "widespread and recurrent," or that the policymakers had actual or constructive knowledge of any comparable conduct and failed to correct it due to their deliberate indifference. *Spell*, 824 F.2d at 1387; *Carter*, 164 F.3d at 220 (isolated incidents of unconstitutional conduct are not sufficient to establish a custom or practice for § 1983 purposes). Thus, Plaintiff Guzzetta has not plausibly alleged the sort of widespread and permanent practice necessary to establish a custom. For these reasons, Plaintiff Guzzetta has not plausibly alleged an official policy or custom to establish municipal liability against Fairfax County for a Section 1983 claim.

> 2. *Plaintiff Guzzetta has failed to plausibly state a claim against Defendants Davis and Billeb in their individual capacities for a violation of his procedural due process rights.*

In Count Two, Plaintiff Guzzetta brings the same procedural due process claim against Defendants Davis and Billeb in their individual capacities, alleging that "Defendants Davis and Billeb failed to provide him with due process in connection to their respective roles in Lt. Guzzetta's demotion and subsequent constructive discharge related to allegations Lt. Guzzetta purportedly faced as a result of the IA investigation." [Doc. No. 38] ¶ 115.

To state a claim for a procedural due process violation, a plaintiff must show that: (1) he had a protected liberty or property interest; (2) the state or its agents deprived him of this interest; and (3) the process by which the deprivation occurred was constitutionally inadequate. *See Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013).

12

Plaintiff Guzzetta asserts a property interest in a compliance hearing under Virginia's Law Enforcement Officers Procedural Guarantee Act (LEOPGA) following the completion of the Internal Affairs investigation, [Doc. No. 38] ¶ 90–91, which appears to have occurred, from the allegations, in January 2023.[6] Defendants argue that Plaintiff Guzzetta fails to allege that state action deprived him of any claimed property interest because he gave notice of his retirement, *see* [Doc No. 38] ¶¶ 53, 57, 63, and there are insufficient allegations that Guzzetta's resignation was involuntary. [Doc No. 40] at 8.

As an initial matter, Plaintiff has not alleged a property interest in continued employment to rebut the presumption in Virginia that he is an at-will employee,[7] but instead points to a property interest arising under LEOPGA, which entitles law enforcement officers to a grievance procedure "before any dismissal, demotion, suspension without pay or transfer for punitive reasons" is imposed.[8] *See Himmelbrand v. Harrison*, 484 F. Supp. 803, 808 (W.D. Va. 1980) (holding that guarantees under LEOPGA gave rise to legitimate and constitutionally protected property interest for the purposes of a procedural due process claim). But given Plaintiff's resignation, the issue reduces to whether the alleged circumstances surrounding that resignation plausibly allege a due

---

[6] Unclear from the factual allegations is whether Plaintiff claims that Defendants Davis and Billeb, in their individual capacities, violated Plaintiff's due process rights after the completion of that investigation, and if so, why. Nevertheless, the Court has assumed that Plaintiff's due process claims includes allegations of some failure to act on the part of these defendants after the completion of the internal investigation.

[7] *See Cnty. of Giles v. Wines*, 546 S.E.2d 721, 723 (Va. 2001) ("In Virginia, an employment relationship is presumed to be at-will, which means that the employment term extends for an indefinite period and may be terminated by the employer or employee for any reason upon reasonable notice.").

[8] LEOPGA provides that "[b]efore any dismissal, demotion, suspension without pay or transfer for punitive reasons may be imposed . . . [t]he law-enforcement officer shall be given an opportunity, within a reasonable time limit after the date of the written notice provided for above, to respond orally and in writing to the charges . . . [and] shall be given written notification of his right to initiate a grievance under the grievance procedure established by the local governing body." VA. CODE ANN. § 9.1-502. Additionally, "[w]henever a law-enforcement officer is dismissed, demoted, suspended or transferred for punitive reasons, he . . . may, within a reasonable amount of time following such action, as set by the agency, request a hearing," which shall be held "within a reasonable amount of time set by the agency." *Id*. § 9.1-504.

13

process violation with respect to his separation from the police force. That inquiry, in turn, revolves around whether Plaintiff has sufficiently alleged that his resignation should be deemed involuntary.

A resignation can be considered a deprivation by state action that triggers the protections of the due process clause only if it was so involuntary that it amounted to a constructive discharge. *See Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 167, 173 (4th Cir. 1988) ("If [plaintiff] resigned of his own free will even though prompted to do so by events set in motion by his employer, he relinquished his property interest voluntarily and thus cannot establish that the state 'deprived' him of it within the meaning of the due process clause.") (internal citations omitted). Courts have found a resignation to be involuntary when it is either (1) obtained by the employer's misrepresentation or deception, or (2) forced by the employer's duress or coercion. *Id.* at 174.

Plaintiff Guzzetta alleges that Defendants "misrepresented the status of the IA investigation, the findings of the IA investigation, the DCJS process and the input that would be reported by FCPD" leading him to "initially go along with Defendant Billeb's proposed retirement plan." [Doc. No. 38] ¶¶ 49, 53. But Plaintiff agreed to retire in October 2022, three months *before* the internal investigation was completed, *see* [Doc. No. 38-2] at 71, and otherwise alleges that he was not "kept informed as to the nature or the status of the IA investigation" until February 2023, when he first learned of the IA investigation's findings. [Doc. No. 38] ¶¶ 42, 47, 56. It is thus unclear how the findings of the IA investigation were misrepresented to him in a material manner, or that he reasonably relied upon any misrepresentations when he agreed to resign in October 2022. *See Stone*, 855 F.2d at 173 ("Under the 'misrepresentation' theory, a resignation may be found involuntary if induced by an employee's reasonable reliance upon an employer's misrepresentation of a material fact concerning the resignation."). Nowhere alleged is what specific representation Plaintiff relied on in deciding to retire in October 2022, and importantly why any such

14

representations were false. Likewise, although Plaintiff alleges that Defendants "repeatedly pressured Lt. Guzzetta and portrayed retirement as the only viable option," [Doc. No. 38] ¶ 52, he fails to allege that "the employer's conduct in requesting resignation effectively deprived the employee of free choice in the matter." *Stone*, 855 F.2d at 174. ("[T]he mere fact that the choice is between comparably unpleasant alternatives—e.g., resignation or facing disciplinary charges—does not of itself establish that a resignation was induced by duress or coercion.").

As alleged, efforts to have Plaintiff retire began on May 26, 2022, when Defendant Billeb acted "harshly and was asserting his power over [Plaintiff] Guzzetta in a threatening manner" before advising Plaintiff Guzzetta to retire, [Doc. No. 38] ¶ 39, then continued on August 15, 2022, when Plaintiff Guzzetta was informed that Defendant Billeb said Plaintiff Guzzetta would be terminated and it was in his best interest to retire, *id.* ¶ 44. On other occasions, Defendant Billeb offered to "slow roll" the Internal Affairs investigation so that it would conclude after Plaintiff Guzzetta was eligible for retirement,[9] and Defendant Billeb "went as far as to set the date by which [Plaintiff] Guzzetta should retire." *Id.* ¶¶ 50–52. These allegations do not sufficiently allege that Plaintiff had been "effectively deprived [] of free choice in the matter[,]" *Stone*, 855 F.2d at 174 or that Plaintiff faced anything beyond "comparably unpleasant alternatives–e.g., resignation or facing disciplinary charges." *Id.* For these reasons, Plaintiff Guzzetta has not plausibly alleged that his resignation was involuntary and that he had thereby experienced state deprivation of a constitutionally protected property interest.

Next, Plaintiff Guzzetta alleges that Defendants Davis and Billeb violated his procedural due process rights by depriving him of his liberty interest in his "good name" and "reputation," and his ability to obtain future employment without a name-clearing hearing or other opportunity

---

[9] Defendants state a February 2023 retirement allowed Plaintiff to accumulate 20 years of service. [Doc. No. 40] at 10.

15

to challenge the "stigmatizing allegations" in his personnel records.[10] *Id.* ¶¶ 104, 108, 120, 129, 165.

To state a claim for deprivation of a liberty interest in one's reputation or choice of occupation, "a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." *Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007) (holding that district court did not abuse its discretion in dismissing plaintiff's complaint where he did not "allege facts asserting a likelihood that prospective employers or members of the public would see the damaging information"). Defendants contest the third and fourth elements, arguing that Plaintiff Guzzetta fails to allege (1) that he was terminated, as opposed to voluntarily retiring and (2) that the Internal Affairs charges against him were false. [Doc. No. 40] at 10–11.

The Court agrees with Defendants.[11] Plaintiff does not allege what information in Plaintiff's PD-29 or personnel files is false. In that regard, Plaintiff's PD-29 form, which Plaintiff Guzzetta attaches to his Complaint, states that: (1) Plaintiff retired; (2) did not leave in good standing; (3) is not eligible for retirement/separation recognition items; and (4) is not recommended for rehire. [Doc. No. 38-2], at 73–77. Although Plaintiff alleges that the "[t]he retirement paperwork . . . contained false information derived solely from the Defendants," [Doc. No. 38] ¶ 55, the Court cannot determine from the Second Amended Complaint, nor could the Plaintiff specify at the Motion hearing, what specific information contained in the PD-29 Form is

---

[10] Plaintiff Guzzetta appears to be referencing the information contained in Form PD-20, *see* [Doc. No. 38] at 73–77, and not the findings in connection with Plaintiff's decertification, which Plaintiff successfully overturned on appeal. [Doc. No. 38] ¶ 82.
[11] As an initial matter, the Second Amended Complaint does not allege facts indicating what role, if any, either Defendant Davis or Billeb personally played in connection with placing the "stigmatizing information" in his file.

16

false. Plaintiff has also failed plausibly to allege that his retirement paperwork would be made available to others or published in some other manner beyond stating that "upon information and belief [it] can be made available to future, prospective employers." *See Sciolino*, 480 F.3d at 646 (A plaintiff "must allege more than that his file 'may be available'" publicly) (internal citations omitted).[12] And given the circumstances surrounding his decision to retire, *see supra* section III(A)(2), Plaintiff has also failed to allege that the allegedly stigmatizing paperwork was "made in conjunction with his termination or demotion." *See Sciolino*, 480 F.3d at 646. Accordingly, Plaintiff Guzzetta has failed to plausibly allege the state deprivation of a constitutionally protected liberty interest.

B. Defendants Davis and Billeb Are Entitled to a Qualified Immunity Defense.

The Court next considers whether Defendants are entitled to a qualified immunity defense for the claims against them in their individual capacities. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Determining whether a state actor is entitled to qualified immunity entails a three-step process: first, a court "must "identify the specific right that the plaintiff asserts was infringed by the challenged conduct"; then the court must conduct a two-step inquiry, "asking whether a constitutional violation occurred and whether the right violated was clearly established at the time of the official's conduct." *Booker v. S.C. Dep't of Corp.*, 855 F.3d 533, 537–38 (4th Cir. 2017) (internal citations omitted). "For a right

---

[12] Although Plaintiff Guzzetta alleges the "publication of the decertification, the public hearings for the same and the subsequent press publications affiliated with the DCJS proceedings," [Doc. No. 38] ¶ 76, he understandably does not bring any procedural due process claims in connection with his decertification, which he successfully overturned on appeal. *Id.* ¶ 82. Rather, Plaintiff's procedural due process claims alleging a deprivation of his reputational liberty interest stem solely from Defendants' failure to hold a name clearing hearing with respect to the findings from the Internal Affairs investigation, which were allegedly placed in Plaintiff's personnel records. *Id.* ¶ 65.

17

to have been clearly established, the contours of the right must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional." *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999) (internal citations omitted). Courts have the discretion to decide the order in which it addresses the last two steps, as if the answer to either question is "no," qualified immunity applies. *Calloway v. City of Goldsboro*, No. 5:16-CV-791-D, 2017 WL 11746219, at *5 (E.D.N.C. Aug. 4, 2017).

As discussed above, *supra* section III(A)(2), Plaintiff Guzzetta fails to plausibly allege that Defendants violated any clearly established constitutional right in light of his resignation. *See Graham*, 473 U.S. at 168 (To establish personal liability in a § 1983 action, a party must "show that the official, acting under color of state law, *caused* the deprivation of a federal right") (emphasis added). Therefore, the Court finds that Defendants Davis and Billeb are entitled to qualified immunity on Plaintiff's claims against them. *See Martin v. Saint Mary's Dep't Soc. Servs.*, 346 F.3d 502, 507 (4th Cir. 2003) ("Because a § 1983 claim cannot be sustained, it follows that the defendants are entitled to qualified immunity.").

C. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's Remaining State Law Claims.

Plaintiff's section 1983 claims are the sole basis for the exercise of federal subject matter jurisdiction. Because the Court has dismissed all claims over which it has original jurisdiction, the Court in its discretion declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. 28 U.S.C. § 1367(c)(3); *see Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001) (holding that a district court's power to remand pendent state claims to state court is inherent in statutory authorization to decline supplemental jurisdiction under § 1367(c)). Accordingly, Plaintiff's remaining state law claims (Counts III-VI) are dismissed without prejudice and may be asserted in state court.

## IV. CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that the Defendant's Motion to Dismiss the Second Amended Complaint, [Doc. No. 39], and the same thereby, is **GRANTED**, and Counts I-II of the Second Amended Complaint are **DISMISSED**; and Counts III-VI are **DISMISSED without prejudice.**

The Clerk is directed to send a copy of this Order to all counsel of record.

October 20, 2025
Alexandria, Virginia

_____
Anthony J. Trenga
Senior U.S. District Judge

19